UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DOUGLAS M. JENNINGS, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | Cause No.  1:04-cv-1862-WTL-RLY |
| ) | |
| AUTO METER PRODUCTS, INC., GAUGE ) | |
| WORKS LLC, and GREGORY DAY, ) | |
| ) | |
| *Defendants*. ) | |

**ENTRY ON DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT, PLAINTIFF'S MOTIONS TO COMPEL PRODUCTION OF DOCUMENTS AND FOR AN EXTENSION OF DISCOVERY, AND PLAINTIFF'S MOTIONS TO STRIKE PORTIONS OF DEFENDANTS' REPLY BRIEFS**

This Matter is before the Court on the above described motions. The Motions are fully briefed, and the Court, having held an oral argument on the matter on December 12, 2005, finds as follows:

**I. Background**

In his First Amended Complaint, Plaintiff, Douglas M. Jennings, contends that Defendant, Gregory Day, on or before January 8, 2000, became aware of an after-market dashboard bezel having instrument holders that was being sold by Plaintiff on a website at www.clubsi.com. (Compl., ¶ 7.) According to Plaintiff, on that same day, Greg Day called Plaintiff for information about buying an after-market dashboard bezel having instrument holders. (Compl., ¶ 8.)  Plaintiff next contends that after seeing the after-market dashboard bezel having instrument holders displayed on the www.clubsi.com website, Greg Day decided to make the same item that embodied features depicted in the after-market dashboard bezel having instrument holders that was displayed on the www.clubsi.com website. (Compl., ¶ 9.)

Plaintiff contends that Greg Day subsequently approached Capital Plastics, Inc., a Virginia corporation, in February of 2000, and asked Capital Plastics to make for Defendant, Gauge Works LLC, a mold for manufacturing an after-market dashboard bezel having instrument holders that embodied the features depicted in the after-market dashboard bezel having instrument holders that was displayed on the www.clubsi.com website. (Compl., ¶ 10.) According to Plaintiff, by the end of March of 2000, Capital Plastics had made the mold for Gauge Works that had been requested by Greg Day and had also made by that same date an after-market dashboard bezel having instrument holders from the mold. (Compl., ¶ 11.)

Plaintiff contends that between January of 2000 and March of 2000, Defendant, Auto Meter Products, Inc., agreed to form a partnership with Greg Day and Gauge Works for selling an after-market dashboard bezel having instrument holders. (Compl., ¶ 12.) Further, Plaintiff contends that Auto Meter, Greg Day, and Gauge Works displayed at a trade show known as the SEMA International Auto Salon on March 31, 2000, to April 2, 2000, the after-market dashboard bezel having instrument holders that Capital Plastics had made from the mold that it had built for Gauge Works. (Compl., ¶ 13.) According to Plaintiff, this was the first time that Auto Meter, Gauge Works, or Greg Day had publicly displayed an after-market dashboard bezel having instrument holders. (Compl., ¶ 14.)

Plaintiff next contends that on October 21, 2002, the Patent Examiner at the United States Patent and Trademark Office (hereinafter "PTO") having jurisdiction over Plaintiff's Bezel Patent Application contacted Auto Meter by telephone and informed Auto Meter of Plaintiff's Bezel Patent Application and requested evidence that showed that one of Auto Meter's products, namely, an aftermarket dashboard bezel having instrument holders (hereinafter "Auto Meter dashboard bezel")

was on sale or publicly available before October 25, 2000.  (Compl., ¶ 15.)  According to Plaintiff, in response to the inquiry from the Examiner, Auto Meter referred the Examiner to Greg Day for the information that she sought.  (Compl., ¶ 16.)  Plaintiff contends that Auto Meter devised a scheme to defraud Plaintiff of the honest services of the Examiner and led the Examiner to think during a telephone conversation with the Examiner that Greg Day was the inventor of the Auto Meter dashboard bezel.  (*Id.*)

Plaintiff next contends that Greg Day conferred with the Examiner by telephone on October 21, 2002, regarding the Auto Meter dashboard bezel.  (Compl., ¶ 17.)  According to Plaintiff, Greg Day participated in the scheme to defraud Plaintiff of the honest services of the Examiner by withholding information from the Examiner that Greg Day had developed the Auto Meter dashboard bezel after seeing the after-market dashboard bezel having instrument holders on the website www.clubsi.com and by leading the Examiner to believe that Greg Day was the inventor of the dashboard bezel disclosed in Plaintiff's Bezel Patent Application.  (*Id.*)

According to Plaintiff, Greg Day told Auto Meter that the Examiner sought evidence that the Auto Meter dashboard bezel was publicly available before October 25, 2000.  (Compl., ¶ 18.) Plaintiff contends that Greg Day told Auto Meter to fabricate and Auto Meter agreed to fabricate a 2000 Special Equipment Manufacturers Association (hereinafter "SEMA") product flyer identifying the Auto Meter dashboard bezel (hereinafter "2000 SEMA product flyer") that displayed a date of October 24, 2000.  (Compl., ¶ 19.)  Further, Plaintiff contends that on October 31, 2002, Auto Meter transmitted the fabricated 2000 SEMA product flyer by wire transmission from its telephone number to the PTO with the intent of misrepresenting the publication date of the 2000 SEMA product flyer as being October 24, 2000.  (Compl., ¶ 20.)

3

Plaintiff contends that the telephone conversation on October 21, 2002, and the wire transmission on October 31, 2002, caused the Examiner to issue an Office Action that was mailed on November 15, 2002. (Compl., ¶ 22.) Plaintiff alleges that in that Office Action, the Examiner rejected the claims in Plaintiff's Bezel Patent Application in view of the 2000 SEMA product flyer that had been transmitted to her by Auto Meter on October 31, 2002. (*Id.*)

Plaintiff further contends that Greg Day contacted a patent attorney, Thomas F. Bergert, to prepare and file a design patent application on the ornamental design of an aftermarket dashboard having instrument holders on November 1, 2002 (hereinafter the "Day Design Patent Application"). (Compl., ¶ 31.) Plaintiff contends that the filing of the Day Design Patent Application was an effort to cover up the misrepresentations made to the Examiner during the telephone conversation on October 21, 2002. (*Id.*)

The Day Design Patent Application issued as U.S. Design Patent No. D480,341 on October 7, 2003. (Compl., ¶ 34.) Plaintiff claims that it issued without the PTO having before it information in Greg Day's and Gauge Works' possession that a reasonable examiner would consider material to the examination of the Day Design Patent Application. (*Id.*) As a consequence, Plaintiff contends, that the Examiner in the Day Design Patent Application deposited in the U.S. Mail an erroneous Notice of Allowance. (*Id.*)

According to Plaintiff, the Examiner of Plaintiff's Bezel Patent Application received Plaintiff's response to her Office Action of November 15, 2002, and contacted Auto Meter by telephone between April 15, 2003, and August 13, 2003, and requested additional information demonstrating that the Auto Meter dashboard bezel was publicly available before June of 1999. (Compl., ¶ 36.) Plaintiff contends that Auto Meter, Gauge Works, and Greg Day agreed to provide

4

the PTO with information portraying that the Auto Meter dashboard bezel was publicly available prior to June of 1999, even though it allegedly did not exist until it was made by Capital Plastics in March of 2000. (Compl., ¶ 38.) Plaintiff contends that Greg Day prepared an Auto Meter dashboard bezel flyer (hereinafter "prepared product flyer") with information intended to mislead the Examiner into concluding that the prepared product flyer was publicly available before June of 1999. (Compl. ¶ 39.) According to Plaintiff, Greg Day mailed the prepared product flyer to the PTO between April 15, 2003, and August 13, 2003. (Compl., ¶ 40.) Plaintiff contends that the mailing of the prepared product flyer by Greg Day caused the Examiner to issue an Office Action that was mailed on August 13, 2003, in which the Examiner rejected the claims in Plaintiff's Bezel Patent Application in view of the prepared product flyer. (Compl., ¶ 43.)

According to Plaintiff, in continued reliance on the prepared product flyer mailed to her by Greg Day, the Examiner issued a Final Office Action that was mailed on February 12, 2004, in which the Examiner made final her rejection of the claims in Plaintiff's Bezel Patent Application in view of the prepared product flyer. (Compl., ¶ 51.)

Plaintiff contends that in a letter mailed by Gauge Works to Plaintiff on September 23, 2004, Gauge Works advised Plaintiff that Gauge Works could only confirm that the prepared product flyer was publicly available prior to November of 1999. (Compl., ¶ 63.) According to Plaintiff, in this letter, Gauge Works stated that the phrase "Available in June" in the prepared product flyer referred to June of 2000. (Compl., ¶ 64.) Plaintiff contends, however, that the Examiner stated in the Final Office Action and her Answer brief for the appeal that the phrase "Available in June" in the prepared product flyer referred to June of 1999. (*Id.*)

Plaintiff also contends that in the September 23, 2004, letter, Gauge Works stated that it had

5

become aware of a Mitsubishi bezel, part no. 81101, and Gauge Works represented the bezel as being publicly available in the spring of 1999. (Compl., ¶ 65.)  According to Plaintiff, Gauge Works stated that the purpose of the Mitsubishi bezel, as depicted by the photographs it provided, made the Mitsubishi bezel prior art relevant to the examination of Plaintiff's Bezel Patent Application. (Compl., ¶ 67.)  Plaintiff contends, however, that Gauge Works knew that the purpose of the lower openings of the Mitsubishi bezel, part no. 81101, did not include retaining add-on automotive gauges and that the photographs mailed to Plaintiff portrayed the Mitsubishi bezel, part no. 81101, in a false light as a dashboard bezel that was used by Mitsubishi to retain automotive instruments therein. (Compl., ¶¶ 68, 69.)  According to Plaintiff, Auto Meter advised Plaintiff, via an October 20, 2004, letter, that it agreed with Gauge Works.  (Compl., ¶ 71.)

On April 14, 2005, Plaintiff filed his First Amended Complaint for the recovery of damages to Plaintiff arising from Defendants' alleged violations of the Racketeer Influence and Corrupt Organizations (hereinafter "RICO") statutes, 18 U.S.C. §§ 1961-1968 and Indiana Code 35-45-6-2, and from the alleged tortious acts of Defendants under Indiana law.

## II.  Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) allows the Court to dismiss any complaint that fails to state a claim that entitles a plaintiff to relief.  A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint, not the merits of the lawsuit.  *See Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990).  In reviewing a motion to dismiss, a court will accept all well-pled facts as true and will draw all reasonable inferences in favor of the plaintiff.  *See Phelan v. City of Chicago,* 347 F.3d 679, 681 (7th Cir. 2003).  A court is not, however, "obliged to accept as true conclusory statements of law or unsupported conclusions of fact." *McLeod v. Arrow Marine Transp.,*

*Inc.,* 258 F.3d 608, 614 (7th Cir. 2001). A court will grant a motion to dismiss only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Phelan,* 347 F.3d at 681 (*quoting Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)).

In reviewing a motion to dismiss a RICO claim, the RICO statute must be given the broad effect that is required by its plain language. *See Morgan v. Bank of Waukegan,* 804 F.2d 970, 974 (7th Cir. 1986). A RICO plaintiff is required, however, to allege sufficient facts to support each element of its RICO claims. *See Cobbs v. Sheahan,* 319 F.Supp.2d 865, 869 (N.D. Ill. 2004)("It is not enough for plaintiff to simply allege these elements in biolerplate language; the complaint must contain sufficient facts supporting each element.").

### III.  Analysis

**A.     Racketeer Influence and Corrupt Organizations (RICO) Statutes**

Defendants contend that Plaintiff's First Amended Complaint is insufficient to support RICO-type charges. They claim that courts have repeatedly rejected efforts like Plaintiff's to convert a garden-variety fraud claim into a federal RICO claim. In addition, Defendants contend that Plaintiff's First Amended Complaint fails to allege the threat of continued racketeering activity, as required by the Supreme Court and the Seventh Circuit. Further, Defendants argue that Plaintiff's First Amended Complaint fails to allege the required predicate acts. Each of Defendants' contentions are discussed below.

The Seventh Circuit has held that the RICO law should not be used to convert "garden-variety fraud actions properly brought under state law" into federal causes of action. In *Midwest Grinding Co. v. Spitz,* 976 F.2d 1016 (7th Cir. 1992), the Seventh Circuit held that "the Supreme Court has attempted to give definition to the pattern requirement to forestall RICO's use against

isolated or sporadic criminal activity, and to prevent RICO from becoming a surrogate for garden-variety fraud actions properly brought under state law." *Id.* at 1022 (*citing H.J., Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 240-241 (1989)). Defendants contend that this is exactly what Plaintiff's First Amended Complaint is attempting to do.

In *Midwest Grinding*, the Seventh Circuit found that RICO was inapplicable when there was only one victim, one scheme, and one type of injury. Defendants contend that Plaintiff's allegations are no more sufficient than the allegations in *Midwest Grinding*. According to Defendants, Plaintiff is the only alleged victim, communication with the PTO is the only alleged scheme, and Plaintiff's inability to obtain a patent is the only alleged injury. This one short-term closed ended scheme, Defendants contend, "has none of the trappings of a long-term criminal operation that carries with it a threat to society; it is, in short, a run-of-the-mill fraud case that belongs in state court." *Id.* at 1025.

Plaintiff, undoubtedly, disagrees with Defendants' description of this case and contends that Defendants fail to recognize the national impact of their actions. According to Plaintiff, there have been multiple victims, schemes and injuries, including those against the taxpaying public, buyers and competitors in the market for aftermarket instrument cluster bezels, and Plaintiff himself.

Despite Plaintiff's attempt to demonstrate the national impact of Defendants' alleged actions, however, this Court agrees with Defendants that the conclusions reached in *Midwest Grinding* control this case. While Plaintiff offers as additional victims the taxpaying public and buyers and competitors in the market for after market instrument cluster bezels, no specific individuals are named. RICO requires more than a single victim to be identified. *See, e.g., SK Hand Tool Corp. v. Dresser Indus., Inc.,* 852 F.2d 936, 940 n.7 (7th Cir. 1988)("There must be some indication of a

'threat of continuing activity' by the defendants, not just one instance of fraud with a single victim."); *see also Cross v. Simons,* 729 F. Supp. 588, 595 (N.D. Ill. 1989)(finding that where multiple victims were alleged to be U.S. Citizens, the Court stated that a "general allegation referring to other purported victims which 'contains no well-pleaded facts permitting us to conclude that some [other] investors may have been hurt by the alleged fraud' is insufficient." (internal citations omitted)). Thus, this Court agrees with Defendants and finds that Plaintiff's First Amended Complaint does not properly plead his federal RICO claims.

Defendants also contend that Plaintiff's First Amended Complaint fails to sufficiently allege the requisite predicate acts for RICO violations. When the predicate acts for RICO violations occur within a relatively brief time and present no indication of a threat of continuing activity by the defendants, there is at most only a single scheme, and no basis for a RICO suit. *See e.g., Design Time, Inc. v. Synthetic Diamond Tech., Inc.,* 674 F. Supp. 1564 (N.D. Ind. 1987). The predicate acts must extend over an extended period of time:

> The first factor, duration, is perhaps the closest thing we have to a bright-line continuity test: the "predicate acts must "extend[] over a substantial period of time", "a few weeks or months" is considered insubstantial. *H.J., Inc.,* 492 U.S. at 242. Here, the effort to divert Midwest's customers and employees was a one-shot scheme that lasted, at most, nine months, from the time Spitz and Grunfeld began doing the groundwork to establish U.S. Grinding (December 1985) to the time Spitz resigned (August 1986).

*Midwest Grinding,* 976 F.2d at 1024.

According to Defendants, the allegations in Plaintiff's First Amended Complaint fail to meet this bright-line test. Specifically, Defendants contend that when searching through Plaintiff's First Amended Complaint, substantive allegations that relate to alleged fraudulent communications between any of the three Defendants and the Patent Office are found in paragraphs 17, 20, and 40:

9

17. On information and belief, Greg Day conferred with the Examiner by telephone on October 21, 2002, regarding the Auto Meter dashboard bezel. Upon information and belief, Greg Day participated in the scheme to defraud Jennings of the honest services of the Examiner by withholding information from the Examiner that Greg Day had developed the Auto Meter dashboard bezel after seeing the after-market dashboard bezel having instrument holders on the website www.clubsi.com and by leading the Examiner to believe that Greg Day was the inventor of the dashboard bezel disclosed in the Bezel Patent Application.

20. Upon information and belief, Auto Meter transmitted on October 31, 2002 at 3:45 P.M., the fabricated 2000 SEMA product flyer by wire transmission from its telephone number 815-895-6786 to the PTO with the intent of misrepresenting the publication date of the 2000 SEMA product flyer as being October 24, 2000.

40. Upon information and belief, Greg Day mailed the prepared product flyer to the PTO between April 15, 2003 and August 13, 2003.

Defendants contend that allegations of three communications with the PTO do not meet the duration requirement for the alleged racketeering activity. All that is alleged, according to Defendants is: (1) a communication between a Defendant and the Patent Office on October 21, 2002; (2) another communication ten days later on October 31, 2002; and (3) a final communication about six months later. Defendants contend that these allegations, are at best, a one-shot scheme that is only six months in duration, and do not amount to sufficient predicate acts for a RICO violation.

Again, Plaintiff disagrees. He responds that his First Amended Complaint pleads "at least seven acts of mail and wire fraud." (Resp. at pg. 2.) Further, toward the end of his Response, Plaintiff again repeats that Defendants committed "at least seven crimes during a period of time that extends for over two years." (Resp. at pg. 11.)

Specifically, in his Response Brief, Plaintiff asserts that Greg Day's design patent application, filed two years after Plaintiff filed his utility patent application, is related to Plaintiff's application, which is the basis of this lawsuit. However, as set forth in Defendant Auto Meter's

10

Reply Brief and by Counsel at Oral Argument, Greg Day's design patent is not relevant to Plaintiff's utility patent application. "Design and utility patents are based on different statutory provisions and involve different subject matter." *Carman Indus., Inc. v. Wahl,* 724 F.2d 932, 939 (Fed. Cir. 1983). "Utility patents afford protection for the mechanical structure and function of an invention whereas design patent protection concerns the ornamental or aesthetic features of a design." *Id.* at 939 n.13. The scope of protection afforded by each type of patent is different. *Id.* at 939.

The Court agrees with Defendants that Greg Day's design patent, filed two years after Plaintiff's utility patent, is not relevant to Plaintiff's pending utility patent application. Thus, Greg Day's filing of a design patent application is not "another scheme", as Plaintiff suggests, and bears no relevance to Plaintiff's patent application.

Plaintiff also suggests a "continuation of a scheme" in which Gauge Works mailed a letter to Plaintiff. In his Response, Plaintiff states that "the mailing of Gauge Works' letter of September 23, 2004 [is] a continuation of the scheme to mislead Mr. Jennings regarding his patent rights." (See Resp. at pg. 7.) As Defendants point out, however, Gauge Works' letter was in direct response to Plaintiff's written inquiry. (See Ex. 3 to Auto Meter's Reply.) This Court agrees with Defendants that their responsive communications to Plaintiff are not a "scheme" and have no relevance to Plaintiff's theories of fraudulent communications with the PTO.

The Court agrees with Defendants that the basis for this suit alleges only three fraudulent communications with the Patent Office, which took place within 6 months, and were in response to inquiries from the Patent Office Examiner. The absence of multiple predicate acts is, by itself, enough to dismiss Plaintiff's RICO claims.

Defendants also contend that Plaintiff has failed to allege a threat of continued criminal activity by any of the defendants. In *Corley v. Rosewood Care Ctr.,* 388 F.3d 990, 1002 (7th Cir. 2004), the Seventh Circuit affirmed the dismissal of RICO claims against a nursing home that broke its promises to a patient, holding that RICO requires not only multiple acts of racketeering activity, but also the threat of continued criminal activity. Thus, in order to avoid dismissal, Defendants contend, that Plaintiff must allege the threat of continuing criminal activity.

According to Defendants, the only paragraphs of the Amended Complaint that allude to continuing activity are paragraphs 76, 81, and 82.

> 76. As long as the PTO continues to rely upon false documents and misrepresentations of prior art provided to the PTO by [defendants]..., the public, the payers of user fees at the PTO, and Jennings continued [sic] to be defrauded of the honest services of the Examiner, the Board of Patent Appeals, and Interferences, [and defendants]. ... .
>
> 81. Upon information and belief, the alleged pattern of racketeering activity extends into the future as long as PTO proceedings dealing with the misrepresentations of Auto Meter, Gauge Works, and Greg Day continue through Jennings' appeal of the Final Office Action. ... .
>
> 82. Upon information and belief, Auto Meter, Gauge Works, and Greg Day will continue to use the telephone and U.S. Mail to misrepresent documents and facts, including the intentional withholding of facts, to the PTO in order to gain an advantage for the enterprise that sells Auto Meter dashboard bezels and other automotive equipment to the public. This enterprise affects interstate commerce and constitutes a violation of 18 U.S.C. § 1962(a)-(c).

Plaintiff responds that "[c]ontinuity is sufficiently alleged because the predicate acts of mail and wire fraud are alleged as continuing and have not reached their natural end...." [A] careful reading of the Amended Complaint reveals...[that] Jennings has alleged continuity of the enterprise's actions as well as the agreement of its constituents to operate the enterprise for its illegal purposes." (Resp. at pg. 10.)

Having reviewed the above paragraphs, however, this Court again agrees with Defendants that paragraphs 76 and 81 relate to what the PTO may do rather than alleging a threat of continued criminal activity by the Defendants.  Further, paragraph 82, which states that Defendants will continue to use the telephone and mail to misrepresent documents and facts, is vague and speculative.  Thus, Plaintiff's Amended Complaint fails to allege a threat of continued criminal activity.[1]

Finding that Plaintiff has failed to plead the requisite acts and continued criminal activity as required by RICO, this Court **GRANTS** Defendants' Motions to Dismiss as to Counts I and II of Plaintiff's First Amended Complaint.

Further, Plaintiff asserts a state law claim under Indiana Code 35-45-6-2.  Quoting *DirecTV v. Edwards,* 293 F. Supp. 2d 873, 879 (N.D. Ind. 2003), Defendants contend that "[t]he Indiana RICO statute is modeled after federal RICO, and also requires proof of conduct of an enterprise through a pattern of racketeering activity.  As with federal RICO, a plaintiff must satisfy the continuity plus relationship requirement with respect to the predicate acts alleged." *Id.* at 879 (*citing Williams v. Aztar Indiana Gaming Corp.,* 2003 U.S. Dist. LEXIS 6450, at *2 (S.D. Ind. 2003).  The *DirecTV* Court stated that "[s]ince the state version of RICO tracks federal RICO, this Court relies on the guidance for analyzing RICO claims that have been pronounced by the United States Supreme Court.  The establishment of a pattern or racketeering activity is a necessary element for

---

[1] Defendants also contend that Plaintiff has failed to allege a distinction between Defendants and the alleged enterprise.  Because, as stated above, this Court has already determined that Plaintiff has failed to properly plead his federal RICO claims, this Court need not discuss whether or not an alleged enterprise under RICO has been properly pled.

proof of the crime of corrupt business influence." *Id.* Thus, Defendants contend that Plaintiff's claim under Indiana Code 35-45-6-2 should be dismissed for the same reasons his federal RICO claims fail.

This Court agrees. Count III of Plaintiff's First Amended Complaint tracks the language of Plaintiff's federal RICO claims. Therefore, this Court **GRANTS** Defendants' Motions to Dismiss as they pertain to Count III of Plaintiff's First Amended Complaint.

**B.     Fraud, Conversion and Theft**

In Counts IV through VI of Plaintiff's First Amended Complaint, Plaintiff asserts claims against Defendants for fraud, conversion, and theft under Indiana law. The Court agrees with Plaintiff that these state law claims differ from the RICO claims and thus cannot be summarily dismissed along with the RICO claims. However, this Court also agrees with Defendants that ultimately, Plaintiff's First Amended Complaint is not ripe for judicial review.

This dispute turns on the Patent Office's rejection of Plaintiff's application. *See Canady v. Erbe Elektrondizin GmbH,* 271 F. Supp. 2d 64, 74 (D.D.C. 2002)(stating that the ripeness doctrine asks "whether the case has been brought at a point so early that it is not yet clear whether a real dispute to be resolved exists between the parties." (citing 15 Moore's Federal Practice 3d § 101.70)). To date, Plaintiff's appeal of the Patent Examiner's rejection of his application is still pending before the Patent Office Appeal Board. Only if and when the Patent Office Appeal Board rejects Plaintiff's appeal would his remaining claims be ripe for judicial review. For this reason, and in the interests of judicial economy, this Court will **STAY** this Case until such time a decision is made by the Patent Office Appeal Board regarding Plaintiff's appeal. Upon receiving notice of said decision, this Court, if necessary, will address the personal jurisdiction arguments set forth by Gauge

Works and Greg Day, as well as the Motions to Dismiss as they pertain to Counts IV through VI of Plaintiff's First Amended Complaint, and any other issues contained therein.

### IV.  Miscellaneous Matters

Plaintiff filed Motions to Strike Portions of Defendants' Reply Briefs (See Docket Nos. 95 and 96).  Particularly, Plaintiff contends that this Court cannot consider Exhibit I of Auto Meter's Reply Brief and Exhibit 2 of Gauge Works and Greg Day's Reply Briefs without converting their Motions to Dismiss into Motions for Summary Judgment.  This Court, however, did not consider either Exhibit I or Exhibit 2 in its determination of Defendants' Motions to Dismiss.  Therefore, this Court deems Plaintiff's Motion to Strike **MOOT** in light of the above.

Further, Plaintiff filed Motions to Compel Production of Documents and for an Extension of Discovery against Defendants.  These Motions (See Docket Nos. 105 and 107) are hereby **STAYED** pending resolution of Plaintiff's application before the Patent Appeals Board.

### V.  Conclusion

For the reasons stated above, Defendants' Motions to Dismiss as they pertain to Counts I through III of Plaintiff's First Amended Complaint are **GRANTED**.  Further, this case is **STAYED** pending a decision by the Patent Office Appeal Board regarding Plaintiff's pending application.  Upon notification that such a decision has been reached by the Patent Office Appeal Board, the Court, if necessary, will consider Gauge Works' and Greg Day's arguments on personal jurisdiction, as well as Defendants' Motions to Dismiss as they pertain to Counts IV through VI of Plaintiff's First Amended Complaint, and any other issues contained therein.

ENTERED this 28th day of March, 2006.

_____
Hon. William T. Lawrence, Magistrate Judge
United States District Court
Southern District of Indiana

Southern District of Indiana

Distribution:

Kenneth W. Brothers
DICKSTEIN SHAPIRO MORIN
OSHINSKY LLP
brothersk@dsmo.com

D. Kyle Deak
WILLIAMS MULLEN
kdeak@williamsmullen.com

David M. Lockman
MAGINOT MOORE & BECK
dmlockman@maginot.com

Harold C. Moore
MAGINOT MOORE & BECK
hcmoore@maginot.com

Daniel David Trachtman
WOODEN & MCLAUGHLIN LLP
dtrachtman@woodmaclaw.com

Peter A. Veytsman
DICKSTEIN SHAPIRO MORIN &
OSHINSKY LLP
veytsmanp@dsmo.com

James Douglas Wood
MAGINOT MOORE & BECK
jdwood@maginot.com

Bryan Douglas Wright
WILLIAMS MULLEN
bwright@williamsmullen.com